IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No.: 5:21-cv-00416-D

| | |
|---|---|
| CIELO JEAN GIBSON, CLARK FLORIAN a/k/a CLARK GILMER, CORA SKINNER, DESSIE MITCHESON, IRINA VORONINA, JAIME EDMONDSON LONGORIA, JESSA HINTON a/k/a JESSICA HINTON, JESSICA BURCIAGA, KIMBERLY COZZENS a/k/a KIM COZZENS, LUCY PINDER, PAOLA CANAS, SARA UNDERWOOD, TIFFANY TOTH GRAY, <br><br> Plaintiffs, <br><br> v. <br><br> RPS HOLDINGS LLC d/b/a CAPITAL CABARET and PHONG NGUYEN, <br><br> Defendants. | **AMENDED COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Cielo Jean 'CJ' Gibson, Clark Florian a/k/a Clark Gilmer, Cora Skinner, Dessie Mitcheson, Irina Voronina, Jaime Edmondson Longoria, Jessa Hinton a/k/a Jessica Hinton, Jessica Burciaga, Kimberly Cozzens a/k/a Kim Cozzens, Lucy Pinder, Paola Canas, Sara Underwood, Tiffany Toth Gray, (collectively, "Plaintiffs"), file this Amended Complaint against RPS Holdings LLC d/b/a Capital Cabaret and Phong Nguyen, (collectively "Defendants"), and respectfully allege as follows:

## BACKGROUND

1.      This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of Images of Plaintiffs, each of whom are well-known professional models, to promote their strip club, Capital

- 1 -

Cabaret, located in Morrisville, North Carolina ("Capital" or the "Club").

2.     As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' Images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of privacy - misappropriation; d) violation of North Carolina's Unfair & Deceptive Trade Practices Act, N.C. Gen. Stat § 75-1.1 *et seq.*; e) defamation; and f) various common law torts, including conversion.

3.     In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant(s) from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 28 U.S.C. § 1125(a)(1).

5.     This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6.     Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7.     According to publicly available records, defendant RPS Holdings LLC operating under the laws of the state of North Carolina, operates Capital, which is located 6713 Mount Herman Road, Morrisville, North Carolina, 27560.

8.     Venue is proper in the United States District Court for the Eastern District of North Carolina because Defendants' principal place of business in Morrisville, North Carolina.

- 2 -

9.      A significant portion of the alleged causes of action arose and accrued in Morrisville, North Carolina and the center of gravity for a significant portion of all relevant events alleged in this amended complaint is predominately located in Morrisville, North Carolina.

## PARTIES

### *Plaintiffs*

10.      Plaintiff Cielo Jean 'CJ' Gibson ("Gibson") is a well-known professional model, and a resident of Los Angeles County, California.

11.      Plaintiff Clark Florian a/k/a Clark Gilmer ("Florian") is a well-known professional model, and a resident of Los Angeles County, California.

12.      Plaintiff Cora Skinner ("Skinner") is a well-known professional model, and a resident of Los Angeles County, California.

13.      Plaintiff Dessie Mitcheson ("Mitcheson") is a well-known professional model, and a resident of Orange County, California.

14.      Plaintiff Irina Voronina ("Voronina") is a well-known professional model, and a resident of Los Angeles County, California.

15.      Plaintiff Jaime Edmondson Longoria ("Longoria") is a well-known professional model, and a resident of Maricopa County, Arizona.

16.      Plaintiff Jessica Hinton a/k/a Jessa Hinton ("Hinton") is a well-known professional model, and a resident of Los Angeles County, California.

17.      Plaintiff Jessica Burciaga ("Burciaga") is a well-known professional model, and a resident of Fulton County, Georgia.

18.      Plaintiff Kimberly Cozzens a/k/a Kim Cozzens ("Cozzens") is a well-known

- 3 -

professional model, and a resident of Santa Clara County, California.

19. Plaintiff Lucy Pinder ("Pinder") is a well-known professional model, and a resident of England.

20. Plaintiff Paola Canas ("Canas") is a well-known professional model, and a resident of Miami-Dade County, Florida.

21. Plaintiff Sara Underwood ("Underwood") is a well-known professional model, and a resident of Multnomah County, Oregon.

22. Plaintiff Tiffany Toth Gray ("Toth") is a well-known professional model, and a resident of Orange County, California.

***Defendants***

23. Defendant RPS Holdings LLC is a domestic limited liability corporation formed under the laws of the state of North Carolina and registered to conduct business in North Carolina. At all times relevant to this action, RPS Holdings LLC operated Capital Cabaret in Morrisville, North Carolina.

24. Defendant Phong Nguyen is a Managing Member of Defendant RPS Holdings, LLC who himself, upon information and belief, was the natural person who directed, supervised, participated in, and is responsible for the wrongful acts and omissions complained of herein.

25. Service of process may be perfected upon Defendant RPS Holdings LLC by serving the registered agent for service of process, Phong Nguyen who can also be served in his capacity as an individual Defendant at 6713 Mount Herman Road, Morrisville, North Carolina 27560-9223.

## FACTUAL ALLEGATIONS

26. Each Plaintiff is a well-known professional model who earns her livelihood

- 4 -

modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

27.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

28.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendants to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendants.

29.     In the case of each Plaintiff, this apparent claim was false.

30.     Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

31.     No Plaintiff has ever received any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

32.     Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

33.     In other cases, Defendants misappropriated Plaintiffs' Images from other sources through unlawful violation of copyrights and or licenses that were not and never were held by Defendants.

- 5 -

*Plaintiffs' Individual Backgrounds and Careers*

34.     Plaintiff Gibson is an American model who enjoys great success in her industry. Gibson was the *Import Tuner* magazine Model Search winner. Gibson is currently a model for the Falken Drift Team and can be seen at Formula Drift events. Gibson has also appeared in several magazines including *FHM*, *American Curves*, *Supreme*, *MuscleMag International, Muscle & Fitness,* and *Teeze,* Gibson has also modeled for the world's largest PWC Engine Re manufacturer, Short Block Technologies, better known as SBT, Inc. in Clearwater, Florida. Gibson appeared in a home workout video called ENVY as a character named Eliana, which stands for the "E" in ENVY. Gibson continues to promote and market a number of different companies' sport and fitness equipment and is in the process of developing her own line of supplements and fitness clothing.

35.     That we know of, Gibson is depicted in the photos in Exhibit "A" to promote Capital on its Instagram page. This Image was intentionally altered to make it appear that Gibson was either a stripper working at Capital, that she endorsed Capital, or that she was otherwise associated or affiliated with Capital.

36.     Gibson has never been employed at Capital, has never been hired to endorse Capital, has never been otherwise associated or affiliated with Capital, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

37.     Plaintiff Florian grew up in South Carolina and began modeling at the tender age of fourteen for KGB Swimwear. Clark attended the University of South Carolina and earned a Bachelor of Science in Retail/Fashion Merchandising. Shortly after graduating she took a one way flight to Milan and simply made it happen. Upon the end of the season, she made her U.S. base in Los Angeles and is signed with NTA Talent. With a body rivaling that of a Victoria Secret Angel, she is gaining notoriety as a swimwear model.  Since stepping onto the scene, this

- 6 -

classic All-American beauty is quickly capturing the attention of the industry. Catalogues, magazines, campaigns, commercials; this multi-faceted bombshell has also made appearances in major motion pictures and primetime television shows. Ben Affleck requested Clark by name to play a small featured role in his 2012 Oscar worthy film, Argo.

38.     That we know of, Florian is depicted in the photos in Exhibit "B" to promote Capital on its Facebook and Twitter pages. This Image was intentionally altered to make it appear that Florian was either a stripper working at Capital, that she endorsed Capital, or that she was otherwise associated or affiliated with Capital.

39.     Florian has never been employed at Capital, has never been hired to endorse Capital, has never been otherwise associated or affiliated with Capital, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

40.     Plaintiff Skinner is a model and actress. Her television show appearances include, The Tonight Show with Jay Leno, Rules of Engagement, QVC, Shark, Las Vegas "White Christmas", and CSI Miami.  She has modeled for name brands such as, Sketchers, Nordstrom, Fredricks of Hollywood, Tecate, Skky Vodka, and Muscle & Fitness to name a few.  She has even appeared on music videos such as Def Leppard's "Nine Lives".

41.     That we know of, Skinner is depicted in the photo in Exhibit "C" to promote Capital on its Facebook page. This Image was intentionally altered to make it appear that Skinner was either a stripper working at Capital, that she endorsed Capital, or that she was otherwise associated or affiliated with Capital.

42.     Skinner has never been employed at Capital, has never been hired to endorse Capital, has never been otherwise associated or affiliated with Capital, has received no

remuneration for Defendants' unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

43. Plaintiff Mitcheson competed for Miss Pennsylvania USA at eighteen and placed in the top ten. Shortly after, she became the face of Playboy Intimates, the face of MGM Grand Las Vegas, and Miss Pennsylvania Intercontinental. Mitcheson entered *Maxim* magazine's annual "Hometown Hottie" contest along with thousands of models, she was crowned *Maxim* magazine's "Hometown Hottie". Later that year, Mitcheson was #100 on *Maxim's* "Hot 100" list. She has graced the pages of multiple issues of *Maxim*, including a three-page spread, two centerfolds, and the cover for the May 2014 "Navy" issue. Mitcheson was recently featured as the main Tecate Beer ring girl in the biggest Pay-per-View event in history, the Mayweather v. Pacquiao fight, which gave her worldwide visibility with over 100 million viewers. This triggered a huge demand for her modeling services. She has been featured by national advertisers such as Crest toothpaste, Tecate, Roma Costumes, and J. Valentine. Mitcheson currently has 406 thousand Instagram followers, over 22 thousand Facebook followers, and 13.9 thousand Twitter followers.

44. That we know of, Mitcheson is depicted in the photos in Exhibit "D" to promote Capital on its Facebook page. This Image was intentionally altered to make it appear that Mitcheson was either a stripper working at Capital, that she endorsed Capital, or that she was otherwise associated or affiliated with Capital.

45. Mitcheson has never been employed at Capital, has never been hired to endorse Capital, has never been otherwise associated or affiliated with Capital, has received no remuneration for Defendants' unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

- 8 -

46.     Plaintiff Voronina is an international model and actress. After becoming *Playboy's* Miss January 2001, she represented international brands including SKYY Vodka, Miller Lite, Michelob Ultra, Bacardi, and Sisley & Detour to name a few. She has millions of visual impressions around the globe via the covers and pages of worldwide magazines such as *FHM, Maxim, Playboy* (in 20 countries), *Max*, *Ocean, Shape, 944, Knockout, Q*, *People*, *Kandy, Rukus, Vape* and *Browz* magazines. In 2008, Voronina was named St. Pauli Girl spokes model and completed a 12-month PR tour across America. She became the first ever St. Pauli Girl to ring the NYSE closing bell representing Constellation Brands.  In 2013, Voronina was named *Kandy Magazine'*s Model of the Year as a result of her fans downloading the highest number of digital issues that year. Voronina got her first big screen break in "Reno 911!: Miami.". Her credits include a series regular role in the fully improvised sitcom "Svetlana" for HD Net, the first ever live action show on Adult Swim Network "Saul of the Mole Men," guest star appearance on Nickelodeon's "iCarly," Comedy Central's "Reno 911!", and feature film parts in "Balls of Fury," &"Piranha 3DD," "Laser Team," and "Killing Hasselhoff." She starred in the indie action flick "Scramble" which she also co-produced. Voronina tours and performs nationally as a stand-up comedian. She loves connecting with her fans and stays active daily across all social media outlets for her followers on Facebook, Instagram, Twitter and YouTube. She has more than 4.5 million social media followers.

47.     That we know of, Voronina is depicted in the photos in Exhibit "E" to promote Capital on its Facebook page. This Image was intentionally altered to make it appear that Voronina was either a stripper working at Capital, that she endorsed Capital, or that she was otherwise associated or affiliated with Capital.

48.     Voronina has never been employed at Capital, has never been hired to endorse

- 9 -

Capital, has never been otherwise associated or affiliated with Capital, has received no remuneration for Defendants' unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

49.     Plaintiff Longoria comes from a family of police officers. She graduated from Florida Atlantic University with a degree in Criminal Justice in 2002. She worked the night shift as a police officer in Boca Raton, Florida for two years until quitting to become a cheerleader for the Miami Dolphins. Longoria and fellow Miami Dolphins cheerleader Cara Rosenthal were participants in the competitive reality TV series "The Amazing Race 14." Longoria was Playmate of the Month in the January 2010 issue of *Playboy*. She has been a sports blogger for Playboy online and co-host of Sirius Fantasy Sports Radio. She appeared on "The Bunny House" documentary, in the Trace Adkins video for "This Aint No Love Song," and numerous other television, print, radio, and online outlets. Longoria and her husband, MLB Superstar Evan Longoria have 2 children.

50.     That we know of, Longoria is depicted in the photos in Exhibit "F" to promote Capital on its Facebook page. This Image was intentionally altered to make it appear that Longoria was either a stripper working at Capital, that she endorsed Capital, or that she was otherwise associated or affiliated with Capital.

51.     Longoria has never been employed at Capital, has never been hired to endorse Capital, has never been otherwise associated or affiliated with Capital, has received no remuneration for Defendants' unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

52.     Plaintiff Burciaga is a model and a business owner from Orange County, CA. She is of Mexican, French, and Irish descent. Burciaga began modeling in 2005 when she submitted a

few photos to *Stuff Magazine*. The magazine responded by flying her out to New York for a photo shoot. After Burciaga's first photo shoot, she won *Stuff Magazine's,* "Neighborhood Knockout," contest. The prize was $5,000, a 4-page spread in the magazine, and an appearance as a ring girl in EA Sports *Fight Night Round* 3 video game. Burciaga's popularity rose quickly and she began appearing in various magazines including *Playboy, Maxim, Import Tuner, Modified Mag, Performance Auto & Sound, Show Latina, Lowrider Magazine*, and many others. Burciaga was the *Playboy* Playmate of the Month for February 2009 and has appeared as herself in several episodes of the reality TV series *The Girls Next Door*. Recently she has been focusing on various business ventures including a women's online clothing boutique, www.SailorandSaint.com. Burciaga's social media reach has surpassed 1.6 million followers on Instagram, over 49 thousand Facebook likes, and over 192 thousand followers on Twitter.

53. That we know of, Burciaga is depicted in the photo in Exhibit "G" to promote Capital on its Facebook page. This Image was intentionally altered to make it appear that Burciaga was either a stripper working at Capital, that she endorsed Capital, or that she was otherwise associated or affiliated with Capital.

54. Burciaga has never been employed at Capital, has never been hired to endorse Capital, has never been otherwise associated or affiliated with Capital, has received no remuneration for Defendants' unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

55. Plaintiff Hinton was discovered by a talent manager at a wedding at 14. By 16 she locked in three national TV commercials and made guest appearances on *Baywatch* and *7th Heaven*. Hinton expanded her portfolio to include runway modeling and print campaigns at 18. In 2010, Hinton was the face of the *Palms Hotel & Casino's* ad campaign. She then pursued TV

- 11 -

personality roles hosting for *Victory Poker*, and *Top Rank Boxing* interviewing the likes of Manny Pacquiao and Shane Mosley. In 2011, she was selected as *July's Playmate of the Month* becoming one of the most popular Playmates of that year. She was the center piece of an ad campaign for *Milwaukee's Best Beer* in conjunction with *Playboy Enterprises*. Hinton also attained spokesmodel roles for *Affliction Clothing*, *Enzo*, *Milano Hair Products*, *REVIV Wellness Spa*, and *Protein World*. She has ongoing modeling contracts with *Rhonda Shear Shapewear*, *Leg Avenue,* and *Roma Costume*, in addition to hosting a Los Angeles, CA television station *KTLA*. Her images have appeared on billboards, magazines, posters, and multiple forms of electronic media. Hinton has been a featured front cover model gaining attraction for magazines such as *FHM*, *Kandy*, *MMA Sports*, *Guitar World*, and *Muscle & Fitness*. She was named Creative Director for *MAJR Media* and was given part ownership for her role with the company. Hinton has successfully accomplished elite status as a social media celebrity with a combined total of over 4.2 million followers on Facebook, Instagram and Twitter.

56.     That we know of, Hinton is depicted in the photo in Exhibit "H" to promote Capital on its Facebook page.  This Image was intentionally altered to make it appear that Hinton was either a stripper working at Capital that she endorsed Capital, or that she was otherwise associated or affiliated with Capital.

57.     Hinton has never been employed at Capital, has never been hired to endorse Capital, has never been otherwise associated or affiliated with Capital, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

58.     Plaintiff Cozzens is a model and actress who has appeared on an Old Spice national commercial, as well as a New Amsterdam Vodka national commercial. She has modeled

- 12 -

for campaigns with Guess, Old Spice, Grey Goose, Sephora Cosmetics, Con Air Hair Tools, Sketcher Shoes, and many more. She has also modeled for Maxim magazine, Sandals Resort, Dodge, and Pepsi to name a few. Kim in total, has signed with 12 top agencies internationally, two of them being LA Models and LATALENT.

59.    That we know of, Cozzens is depicted in the photos in Exhibit "I" to promote Capital on its Facebook page.  This Image was intentionally altered to make it appear that Cozzens was either a stripper working at Capital that she endorsed Capital, or that she was otherwise associated or affiliated with Capital.

60.    Cozzens has never been employed at Capital, has never been hired to endorse Capital, has never been otherwise associated or affiliated with Capital, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

61.    Plaintiff Pinder is, and at all times relevant to this action was, an English model, actress, host, businesswoman, and one of Great Britain's most famous glamour models. Pinder has featured in publications such as *FHM, Nuts, Loaded, The Daily Star,* and hundreds of others. Pinder has appeared on *FHM's* list of the "100 Sexiest Women in the World" in 2005, 2006, and 2007. She was a guest columnist in *Nuts*, entitled "The Truth About Women" and appeared on the final edition of the *Nuts* magazine cover. Pinder has collaborated with major brands such as Unilever (Lynx) and Camelot (National Lottery) among others, and on large national and international advertising campaigns. Pinder has an established an acting career with many TV appearances and Film credits. She has appeared on shows such as *I'm Famous and Frightened*, *Soccer AM, Weakest Link, Nuts Tv (host) MTV's TMF (presenter), Hotel Babylon,* and *Team and Bo!* in the USA. Pinder was also a contestant on *Celebrity Big Brother*. Pinder starred in films

such as *The Seventeenth Kind, Age of Kill,* and *Warrior Savitri*. Pinder works closely with a number of Wildlife charities and is involved in fundraising for Tiger Time, The David Shepherd Wildlife Foundation and International Animal Rescue. Pinder has also worked with *Help for Heroes* appearing in the *Hots Shots* fund raising calendar and supported Male Cancer Awareness Campaign taking part in their MCAC London Strut awareness initiative. She also visited troops in Afghanistan in 2007. Pinder's own annual calendar continues to be one of the bestselling model calendars year after year and enhances Pinder's status as an elite class of Social Media Influencers with a combined total of over 2 million followers on Facebook, Instagram, and Twitter.

62.     That we know of, Pinder is depicted in the photo in Exhibit "J" to promote Capital on its Facebook page. This Image was intentionally altered to make it appear that Pinder was either a stripper working at Capital, that she endorsed Capital, or that she was otherwise associated or affiliated with Capital.

63.     Pinder has never been employed at Capital, has never been hired to endorse Capital, has never been otherwise associated or affiliated with Capital, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

64.     Plaintiff Canas is a Colombian born model now residing and working in the United States. Canas has been in the industry for over twelve years and has found great success as a model, host, runway model, and actor. Canas has worked runway shows in her native Colombia, as well as Mexico, Ecuador, United States, and most recently in Paris, France. She heads up the international campaign and was a contracted model for Curve and their worldwide lingerie line. In Dubai, United Arab Emirates, Canas was chosen as the face of the Masters Golf

Tournament, and was the image for the "International Surf and Sport Expo" in Orlando, FL. She has worked for international brands and labels such as SOHO, KISS underwear, Salon International, Zona Rosa, and Esteban Escobar. She has appeared in numerous TV shows like "FOX Sports" and on TV networks such as Telemundo and TV Azteca. Canas continues to build an impressive profile and is constantly in demand between Miami, FL, New York, NY, and Los Angeles, CA. Canas has over 545 thousand Instagram followers, over 10.5 thousand followers on Twitter, and over nine thousand Facebook likes.

65. That we know of, Canas is depicted in the photos in Exhibit "K" to promote Capital on its Facebook page. This Image was intentionally altered to make it appear that Canas was either a stripper working at Capital, that she endorsed Capital, or that she was otherwise associated or affiliated with Capital.

66. Canas has never been employed at Capital, has never been hired to endorse Capital, has never been otherwise associated or affiliated with Capital, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

67. Plaintiff Underwood first appeared in *Playboy* in the pictorial "The Girls of the Pac 10" in the October 2005 issue in which she also graced the cover. Underwood was the Playmate of the Month in the July 2006 issue of the famous men's magazine. She was named Playmate of the Year in 2007. She has been featured in many *Playboy* videos, and not only has she appeared as herself in the films *The House Bunny* (2008) and *Miss March* (2009) but also in episodes reality TV series such as Kendra (2009), *The Girls Next Door* (2005) and *Bridget's Sexiest Beaches* (2009). Underwood has also worked on television as a continuity announcer for the Blackbelt TV cable network and co-hosted hundreds of episodes of G4's "Attack of the

- 15 -

Show". She has over 14 million social media followers.

68.    That we know of, Underwood is depicted in the photos in Exhibit "L" to promote Capital on its Facebook page. This Image was intentionally altered to make it appear that Underwood was either a stripper working at Capital, that she endorsed Capital, or that she was otherwise associated or affiliated with Capital.

69.    Underwood has never been employed at Capital, has never been hired to endorse Capital, has never been otherwise associated or affiliated with Capital, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

70.    Plaintiff Toth is an extremely successful model that takes great pride in holding the prestigious title of a *Playboy* Playmate. Toth was the *Playboy* "Cyber Girl of the Month" for May 2006. She then went on to pose for three pictorials under *Playboy's* Fresh Faces. Moreover, she has not only been featured in such magazines as *Super Street Bike*, *Import Tuner, Sport Truck, Iron Man, Seventeen*, and *Maxim*, but has also posed for various catalogs. Toth currently has over 3.7 million Facebook followers, 1.4 million Instagram followers, and over 305 thousand Twitter followers, and 1.08 thousand YouTube subscribers.

71.    That we know of, Toth is depicted in the photos in Exhibit "M" to promote Capital on its Facebook page. This Image was intentionally altered to make it appear that Toth was either a stripper working at Capital that she endorsed Capital, or that she was otherwise associated or affiliated with Capital.

72.    Toth has never been employed at Capital, has never been hired to endorse Capital, has never been otherwise associated or affiliated with Capital, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer,

damages as a result of same.

*Defendants' Business Activities and Misappropriation*

73.    Defendants operates Capital, where they are engaged in the business of selling alcohol and food in an atmosphere where nude or semi-nude women entertain the business' clientele.

74.    In furtherance of its promotion their promotion of Capital, Defendants own, operate, and control Capital's social media accounts, including its Facebook, Twitter, and Instagram accounts.

75.    Defendants used Capital's Facebook, Twitter, and Instagram accounts to promote Capital, and to attract patrons.

76.    Defendants did this for their own commercial and financial benefit.

77.    Defendants have used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Capital, endorsed Capital, or was otherwise associated or affiliated with Capital.

78.    Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Capital to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

79.    Defendants were well aware that none of the Plaintiffs have ever been affiliated with or employed by Capital, and at no point have any of the Plaintiffs ever endorsed Capital, or otherwise been affiliated or associated with Capital.

- 17 -

80. All of Defendants' activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

81. Defendants have never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

82. Plaintiffs have never received any benefit from Defendants' unauthorized use of their Images.

### Standard Business Practices in the Modeling Industry

83. It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

84. The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

85. Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

### Defendants' Misappropriation of Plaintiffs' Images

86. Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Capital.

87. Unauthorized use of Plaintiffs' Images deprives them of income they are owed

- 18 -

relating to the commercialization of their Images.

88.     In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Capital.

89.     At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

90.     No Defendants ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

91.     No Defendants ever paid any Plaintiff for its use of her Images on any promotional materials, including Capital's website, Twitter, Facebook, or Instagram accounts.

92.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

93.     Defendants' use of Plaintiffs' Images in some cases was also in violation of copyrights and/or licenses held by others, who had lawful relationships with Plaintiffs based on the standard business practices in the modeling industry.

94.     Defendants' breaches of copyrights and/or licenses held by others likewise had the purpose and effect of injuring Plaintiffs in the ways complained of herein, as Plaintiffs were foreseeable victims of harm from Defendants' breaches.

## FIRST CAUSE OF ACTION
### (Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B): False Advertising)

95.     The advertisements at issue in this action were false and misleading under 15 U.S.C. § 1125(a)(1)(B) because no Plaintiff ever worked at or was in any way associated or affiliated with The Club, nor had they agreed to appear in Capital's advertisements.

- 19 -

96.     Given the false and misleading nature of the advertisements, they had the capacity to and did deceive consumers.

97.     Upon information and belief, the deceptive advertisements had a material effect on the purchasing decisions of consumers who attended Capital.

98.     Defendants' publication of these false and misleading advertisements on the internet had the capacity to and did affect interstate commerce.

99.     Even though Defendants were at all times aware that the Plaintiffs neither worked at nor endorsed Capital, Defendants nevertheless used Plaintiffs Images to mislead potential customers as to Plaintiff's employment at or affiliation with Capital.

100.    Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship of, employment at, or other relationship with Capital.

101.    Defendants' use of Plaintiffs' Images caused consumer confusion as to Plaintiffs' sponsorship of, employment at, or other relationship with Capital, and the goods and services provided by Capital.

102.    Defendants' unauthorized use of Plaintiffs' Images created a false advertisement prohibited by section 43 of the Lanham Act, and Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

**SECOND CAUSE OF ACTION**
**(Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A): False Association)**

103.    Defendants' use of Plaintiffs Images created the false impression with the public that Plaintiffs were affiliated, connected, or associated with Capital, or worked at, sponsored, or approved of Capital goods, services, or commercial activities.

104.    This was done to promote and attract clientele to Capital, and thereby generate revenue for the Defendants, for Defendants' commercial benefit.

- 20 -

105.     Even though Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with Capital, nor worked at, sponsored, or approved of Capital's goods, services or commercial activities, Defendant nevertheless used Plaintiffs Images to mislead potential customers as to Plaintiffs' employment at or affiliation with Capital.

106.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association, or employment at Capital.

107.     Defendants' use of Plaintiffs' Images caused consumer confusion as to Plaintiffs' employment at or endorsement of Capital and the goods and services provided by Capital.

108.     Defendants' unauthorized use of Plaintiffs' Images created a false endorsement prohibited by section 43 of the Lanham Act, and Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## THIRD CAUSE OF ACTION
### (Common Law Right of Privacy - Misappropriation)

109.     Defendants have appropriated each Plaintiff's likeness for Defendants' commercial purposes without authority or consent from Plaintiffs.

110.     Defendant misappropriated Plaintiffs' likenesses by publishing their Images on Capital's website or related social media accounts as part of Defendants' advertising campaign.

111.     Capital's website and social media accounts were designed to advertise and attract business to Capital and generate revenue for Defendants.

112.     Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their Image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to)

- 21 -

"pushed" down in time from immediate visibility.

113.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's Image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this amended complaint.

114.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

115.    Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for Capital.

116.    At no point did any Defendants ever seek or receive permission or consent to use any Plaintiff's Image for any purpose.

117.    Defendants were at all relevant times aware that they had never received any Plaintiffs' permission or consent to use their Images in any medium for any purpose.

118.    At no point did Defendants ever compensate Plaintiffs for its unauthorized use of their Images.

119.    Defendants misappropriation of Plaintiffs' Images in some cases was in violation of copyrights and licenses lawfully held by others, and Defendants' lack of respect for those rights was likewise a proximate cause of the harm done to Plaintiffs from Defendants' misappropriation of their Images.

120.    Plaintiffs have been damaged in amounts to be proved at trial.

**FOURTH CAUSE OF ACTION**
**(Violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq.*)**

121.    Defendants' operated Capital's website and social media accounts in order to

- 22 -

promote Capital, to attract clientele thereto, and to thereby generate revenue for Defendant.

122.    As such, Defendants' operation of the website and social media accounts, and their publication of Images thereon, were in commerce, in that they involved a business activity and the day-to-day activities and affairs of Defendants in North Carolina.

123.    Defendants' published Plaintiffs' Images on Capital's website and social media accounts to create the false impression that Plaintiffs were either strippers working at Capital, endorsed Capital, or were otherwise affiliated, associated, or connected with Capital.

124.    As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with Capital.

125.    Defendants' false advertising, misrepresentations, and breaches of their duties to Plaintiffs and the public were unfair, in that they were immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers in North Carolina.

126.    Defendants' false advertising, misrepresentations, and breaches of their duties to Plaintiffs and the public were deceptive, in that they possessed the tendency or capacity to mislead, or created the likelihood of deception, affecting members of the public in North Carolina and thereby causing injury to Plaintiffs.

127.    Upon information and belief, members of the public relied upon and were in fact deceived by Defendants' false advertising, misrepresentations, and breaches of their duties to Plaintiffs and the public.

128.    Defendants thus engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce in the state of North Carolina, and caused injury to the Plaintiffs as complained of herein.

129.    Defendants' advertising practices offend the public policy of North Carolina insofar

- 23 -

as they constitute misappropriation of Plaintiffs' property rights in their own Images, breaches of copyrights and/or licenses held by others, and invasion of Plaintiffs' privacy, for Defendants' commercial benefit.

130.     Defendants' advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with and/or are strippers at Capital.

131.     Defendants' advertising practices cause substantial injury to consumers and the Plaintiffs by creating the false impression that Plaintiffs are strippers at, endorse, or are otherwise affiliated with Capital.

132.     There are no benefits to Defendants' advertising practices as set forth hereon except a benefit to Defendants own commercial interests.

133.     As a result of Defendants' unauthorized and misleading publication of Plaintiffs' Images on its website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

134.     As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

135.     Plaintiffs are entitled to treble damages pursuant to N.C.G.S. Section 75-1.

136.     Plaintiffs are further entitled to an award of attorney's fees against and taxed to Defendants pursuant to N.C.G.S. Section 75-16.1

### FIFTH CAUSE OF ACTION
**(Defamation)**

137.     As detailed throughout this Amended Complaint, Defendants have published

- 24 -

altered Images of Plaintiffs in order to promote Capital to the general public and potential clientele.

138.     Defendants' publication of said Images constitutes a representation that Plaintiffs was either employed by Capital, that they endorsed Capital, or that they had some affiliation with Capital.

139.     None of these representations were true, , and violated Plaintiffs' rights to their images as well as copyrights and licenses lawfully held by others.

140.     In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were strippers working at Capital or endorsed Capital.

141.     Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by Capital, had no affiliation with Capital, had not consented to the use of their Images, and had not been compensated for the use of their Images.

142.     In the alternative, Defendants published the Images of Plaintiffs with actual malice, and their acts were gross and wanton, evidencing a reckless disregard for the rights of Plaintiffs, because the Defendants they knew that Plaintiffs were not employed by Capital, had no affiliation with Capital, had not consented to the use of their Images, and had not been compensated for the use of their Images.

143.     Despite Defendants' knowledge and reckless disregard of the true facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

144.     Defendants' publication of Plaintiffs' Images constitutes defamation per se under

North Carolina law because said publication falsely accuses Plaintiff of having acted in a manner – *i.e.*, working as a stripper and/or endorsing a strip club - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

145.     Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under North Carolina law because said publication would tend to impeach and injure each Plaintiff in her trade, business, and profession as a professional model.

146.     This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendants' publication of the Images support.

147.     Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under North Carolina law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

148.     Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### SIXTH CAUSE OF ACTION
**(Negligence, Gross Negligence, and *Respondeat Superior*)**

149.     Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, copyrights, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-*

*consensual* use of intellectual property, copyrights, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

150.    Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

151.    Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

152.    Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

153.    Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, copyrights, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

154.    Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with federal and North Carolina law, were not violated.  Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

155.    Defendants' breaches were gross and wanton, evidencing a reckless disregard for the rights of Plaintiffs.

156.    Defendants' breaches were the proximate cause of the harm Plaintiffs suffered

- 27 -

when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

157.    As a result of Defendants' negligence and gross negligence, Plaintiffs have suffered damages and are entitled to recover compensatory and punitive damages from the Defendants in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Conversion)

158.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

159.    By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain.

160.    As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Unjust Enrichment)

161.    As set forth in detail above, Defendants published Plaintiffs' Images in order to promote Capital to the general public and potential clientele.

162.    Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either strippers working at Capital or endorsed Capital.

163.    Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

164.    Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

165.    Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting

- 28 -

clientele to Capital.

166. Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

167. As such, Plaintiffs have been damaged in an amount to be determined at trial.

**NINTH CAUSE OF ACTION**
**(Quantum Meruit)**

168. Plaintiffs are each internationally known models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

169. Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

170. Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at Capital, endorse Capital, or are otherwise affiliated with Capital, Defendants have not compensated Plaintiffs.

171. Plaintiffs are therefore entitled to reasonable compensation for Capital' unauthorized use of their Images.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For the Defendants to be adjudged jointly and severally liable to Plaintiffs upon Plaintiffs' first through tenth causes of action;

(b) For an award of actual damages to be paid by Defendants to Plaintiffs, in an amount to

- 29 -

be determined at trial, relating to Plaintiffs' first through tenth causes of action;

(c) For an order ***permanently enjoining*** Defendants from using Plaintiffs' Images for any purpose;

(d) For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117, and the North Carolina Unfair and Deceptive Trade Practices Act, § 75-16;

(e) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117, and the North Carolina Unfair and Deceptive Trade Practices Act, § 75-16.1; and

(f) For such other and further relief as the Court may deem just and proper.

**SIGNATURE PAGE FOLLOWS**

- 30 -

Respectfully submitted, this the 7th day of January, 2022.

BY: /s/ John V. Golaszewski

JOHN V. GOLASZEWSKI
N.Y. Bar No. 4121091
THE CASAS LAW FIRM, P.C.
1740 Broadway, 15th Floor
New York, NY 10019
john@casaslawfirm.com
T: 646.872.3178
F: 855-220-9626
*Attorneys for Plaintiff*

BY: /s/ Matthew R. Gambale

MATTHEW R. GAMBALE
N.C. Bar No. 43359
OSBORN GAMBALE BECKLEY & BUDD PLLC
721 W. Morgan Street
Raleigh, North Carolina 27603
matt@counselcarolina.com
T: 919.373.6422
F: 919.578.3733
*Local Civil Rule 83.1(d) Attorneys for Plaintiff*

- 31 -

## <u>CERTIFICATE OF SERVICE</u>

       The undersigned hereby certifies that the foregoing document has been electronically filed with the Clerk of Court using the CM/ECF system, which system will automatically generate and send a Notice of Electronic Filings to the undersigned filing user and registered users of record in the matter, as follows:

Joseph L. Ledford
Attorney at Law
301 South McDowell Street
912 Cameron-Brown Building
Charlotte, NC 28204
F: 704-749-9963
josephlledford@yahoo.com
*Attorney for Defendants*

C. Rob Wilson
Preston W. Rollero
Hedrick Gardner Kincheloe & Garofalo, LLP
4131 Parklake Ave., Suite 300
Raleigh, NC 27612
rwilson@hedrickgardner.com
prollero@hedrickgardner.com
Fax: 919-832-9425
*Attorneys for Defendant*

This the 7th day of January, 2022.

BY: /s/ John V. Golaszewski
JOHN V. GOLASZEWSKI
N.Y. Bar No. 4121091
THE CASAS LAW FIRM, P.C.
1740 Broadway, 15th Floor
New York, NY 10019
john@casaslawfirm.com
T: 646.872.3178
F: 855.220.9626
*Attorneys for Plaintiff*

- 32 -

BY: /s/ Matthew R. Gambale

MATTHEW R. GAMBALE
N.C. Bar No. 43359
OSBORN GAMBALE BECKLEY & BUDD PLLC
721 W. Morgan Street
Raleigh, North Carolina 27603
matt@counselcarolina.com
T: 919.373.6422
F: 919.578.3733
*Local Civil Rule 83.1(d) Attorneys for Plaintiff*