IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No.: 5:21-cv-00416-D

CIELO JEAN GIBSON, et al.,

                          *Plaintiffs*,

- against -

RPS HOLDINGS, LLC, et al.

                          *Defendants*.

## NON-PARTY THE CASAS LAW FIRM, P.C.'S MOTION TO QUASH DEFENDANTS' SUBPOENA OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

Non-Party the CASAS LAW FIRM, P.C. ("CLF"), counsel for Plaintiffs CIELO JEAN GIBSON, CLARK FLORIAN a/k/a CLARK GILMER, CORA SKINNER, DESSIE MITCHESON, IRINA VORONINA, JAIME EDMONDSON LONGORIA, JESSA HINTON a/k/a JESSICA HINTON, JESSICA BURCIAGA, KIMBERLY COZZENS a/k/a KIM COZZENS, LUCY PINDER, PAOLA CAÑAS, SARA UNDERWOOD, and TIFFANY TOTH GRAY (collectively, "Plaintiffs"), hereby moves pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure to quash the January 20, 2023 subpoena *ad testificandum* ("Subpoena") served by defendants RPS HOLDINGS, LLC d/b/a CAPITAL CABARET and PHONG NGUYEN ("Defendants") or, in the alternative, for a protective order.

## FACTS RELEVANT TO THE SUBPOENA

*Background*

Plaintiffs commenced this lawsuit on October 21, 2021, asserting various causes of action based on Defendants' use of Plaintiffs' images in advertising for their strip club, Capital Cabaret, without consent. *See* Dkt. 1. Plaintiffs' allegations of that Defendants used their images in

1

advertising without consent -- which have never been contested or challenged in the sixteen (16) months since this lawsuit was filed, and have been acknowledged by Defendants' corporate representative -- are the predicate of claims for, *inter alia,* false advertising and false association under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and (B), *see* Dkt. 22, Amended Complaint ("Compl."), ¶¶ 95-108; violation of each Plaintiff's common law right of privacy based on the misappropriation of their images, *id.*, ¶¶ 109-120; violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *id.*, ¶¶ 121-136; and defamation. *Id.*, ¶¶ 137-148. Despite being put on notice in October 2021 of their illicit use of Plaintiffs' images and violation of their trademark rights, Defendants have nevertheless continued to use Plaintiffs' images in Capital Cabaret advertising up through the date of this motion, and the advertisements subject to this lawsuit remain posted on the Capital Cabaret social media pages. *See* Exhibit A, screenshots of the subject advertisements from the Capital Cabaret social media pages, dated February 3, 2023.

**The Subpoena**

Without substantive defenses for their unapologetic, years-long, and unrelenting exploitation of Plaintiffs and their images, on January 20, 2023, one week prior to the close of discovery, Defendants issued a subpoena on CLF seeking testimony from Plaintiffs' lawyers concerning, *inter alia*, how CLF "discovered, came across, learned of, and/or otherwise became aware of" the advertisements. *See* Exhibit B ("Subpoena"). Though some Plaintiffs had testified at their deposition they did not recall when, or how, they learned of Defendants' use of their images, other Plaintiffs had testified that they learned about Defendants' use from CLF. The entirety of the Subpoena request reads as follows:

> Whether any delay between the time of the use or publication of the Alleged Postings and the filing of the Complaint and Amended Complaint in this action

2

was excusable and/or reasonable. The designee will address, without limitation, the following subtopics in connection with this topic:
a. The date and time that The Casas Law Firm, P.C., discovered, came across, learned of, and/or otherwise became aware of the Alleged Posting;
b. The means and methods utilized by The Casas Law Firm, P.C. to discover, come across, learn of, and/or otherwise become aware of the Alleged Postings;
c. The process by which The Casas Law Firm, P.C. discovered, came across, learned of, and/or otherwise became aware of the Alleged Postings;
d. The means and methods utilized by The Casas Law Firm, P.C. to discover, come across, learn of, or otherwise become aware of social media posts, advertisements, or other publications that contain photos and likenesses of the Plaintiffs; and
e. The process by which The Casas Law Firm, P.C. discovers, comes across, learns of, or otherwise becomes aware of social media posts, advertisements, or other publications that contain photos or likenesses of the Plaintiffs.

Subpoena at 2. On February 3, 2023, CLF served timely objections to the Subpoena, Exhibit C, and now brings this motion to quash it or, in the alternative, for a protective order.

## ARGUMENT

### I. Relevant Authority

A subpoena issued to a non-party is governed by Fed. R. Civ. P. 45, and "in response to such subpoena a non-party may either file a motion to quash or modify the subpoena pursuant to Fed. R. Civ. P. 45 (d)(3)(A) [or] move for a protective order pursuant to Fed. R. Civ. P. 26(c)…." *Schaff v. Smithkline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005) (citations omitted). In considering whether to enforce a non-party subpoena, a district court should consider "the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Schaff*, 233 F.R.D. at 453 (quoting *Heat & Control, Inc. v. Hester Indus.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986)). In addition, a district court may quash or modify a subpoena if it requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). "In the context of evaluating subpoenas issued to third-parties, a court 'will give extra considerations to

3

the objections of non-party, non-fact witness in weighing burdensomeness versus relevance,'" *Schaff*, 233 F.R.D. at 453 (quoting *Indem. Ins. Co. of N. Am. v. Am. Eurocopter, LLC*, 227 F.R.D. 421, 426 (M.D.N.C. 2005)), as "[t]he determination of the reasonableness of a subpoena requires the court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it, weighing the benefits and burdens, considering whether the information is necessary and whether it is available from another source." *Vengosh v. Jacobs Engineering Group, Inc.*, 5:20-MC-20-RJ, 2020 WL 5709256 (E.D.N.C. Sept. 24, 2020) (citations omitted).

Further, "[t]he work product privilege is designed to protect material 'prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative….'" *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 152 F.R.D. 132, 135 (N.D. Ill. 1993) (quoting Fed. R. Civ. P. 26(b)(3)). The "mental impressions, conclusions, opinions, or legal theories" of an attorney or other party representative are "nearly absolutely protected" and are discoverable only in "very rare and extraordinary circumstances." *Ferrell v. U.S. Dep't of Housing and Urban Development*, 177 F.R.D. 425, 431 (N.D. Ill. 1998); *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947). "Courts carefully guard opinion work product from disclosure to an opposing party, fearing that otherwise '[a]n attorney's thoughts, heretofore inviolate, would not be his own.'" *Allen*, 106 F.3d at 607 (quoting *Hickman*, 329 U.S. at 511). "[R]evealing an attorney's thoughts and opinions to an opposing party runs contrary to the principles underlying the adversary process," *Allen*, 106 F.3d at 607, because if "courts failed to protect opinion work product, lawyers would lose the incentive to do thorough research, relying instead on the opposing party's effort; clients and our adversary system would suffer as a result." *Id.*

Finally, the purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981). "Accordingly, if a party demonstrates that attorney-client privilege applies, the privilege affords all communications between attorney and client absolute and complete protection from disclosure." *In re Allen*, 106 F.3d 582, 600 (4th Cir. 1997); *In re Grand Jury Proceedings*, 102 F.3d 748, 750 (4th Cir. 1996) ("No doubt exists that under normal circumstances, an attorney's advice provided to a client, and communications between attorney and client are protected by attorney-client privilege.").

II. **No Information Sought by the Subpoena is Relevant to Defendants' Defenses and Defendants Thus Have No Need for this Information.**

As detailed in CLF's objections to the Subpoena, since when and how CLF learned about Defendants' use of Plaintiffs' images is irrelevant to this action, the Court should quash the Subpoena or issue a protective order excusing CLF's testimony. *See Schaff*, 233 F.R.D. at 453.

*First*: Defendants' stated purpose of the Subpoena is to purportedly learn "[w]hether any delay between the time of the use or publication" of Plaintiffs' images, and Plaintiffs' lawsuit, was reasonable. Subpoena at 2. But there was no delay at all between Defendants' use of Plaintiffs' images and the lawsuit because Defendants use of the images persists to this day. *See* Exhibit A. In North Carolina, "[o]rdinarily, the period of the statute of limitations begins to run when the plaintiff's right to maintain an action for the wrong alleged accrues. The cause of action accrues when the wrong is complete…." *Davis v. Wrenn*, 121 N.C. App. 156, 158-59 (1995) (quotations omitted), *cert. denied*, 343 N.C. 305 (1996) (emphasis added); *Shepard v. Ocwen Federal Bank, FSB*, 172 N.C. App. 475, 478 (2005) (same). The wrong in this lawsuit -- Defendants' use of Plaintiffs' images in Capital Cabaret advertising without consent and the

5

attendant false statements to consumers that Plaintiffs were strippers at Capital Cabaret, sponsored it or were associated with it -- is not complete; rather it is ongoing as of the date of this motion because the advertisements with Plaintiffs' images remain published and accessible to the public. Also ongoing are the benefits Defendants continue to reap from stating to the public, via the subject advertisements, that Plaintiffs are strippers at Capital Cabaret. Since Plaintiffs could be injured at any time during which their images were being used by Capital Cabaret, absent actual knowledge by Plaintiffs of the use, their causes of action would not have accrued until Defendants removed the advertisements and stopped using their images. *See Square Int'l, Ltd. v. BBDO Atlanta, Inc.*, 455 F.Supp.2d 1347, 1371 (N.D. Ga. 2006) ("The resulting injury, in this case, the untruthful suggestion that BBDO endorsed SCQuARE, <u>arguably continued to occur as long as plaintiff's website displayed the false endorsement,</u> up to and including May or June 2005, when plaintiff finally removed the material." (Citations omitted) (Emphasis added)). Even assuming, *arguendo*, the operative statute of limitations inquiry was when Plaintiffs' *lawyers* learned of Defendants' misuse -- and, as set forth *infra*, it is not -- that inquiry is irrelevant in a situation where the illicit conduct continued not merely up through the date of the Complaint, but for sixteen months post-suit. Considering the theory embedded in Defendants' Subpoena -- that there was any "delay" at all between the time of Defendants' "use" of Plaintiffs' images and Plaintiffs' October 2021 lawsuit -- is deeply flawed and contradicted by Defendants' own continued and illicit use of Plaintiffs' images in advertising, the Subpoena should be quashed for this reason alone.

**Second**, and related: that Plaintiffs learned about Defendants' use of their images on a date while Defendants' use was ongoing means that their injury became "apparent" to them on that date, and the statute of limitations began to accrue on that date. *See* N.C. Gen Stat. § 1-

6

52(16) (a cause of action does not accrue until the injury "becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs."). Since those Plaintiffs who can recall it testified they learned about Defendants' use within a few months of the lawsuit being brought, and since Defendants have no argument or evidence to dispute this testimony, this Court will not need to make any evaluation of the "reasonableness" of any "delay" in bringing suit, or when the injury "ought reasonably to have become apparent to them." Thus, the information sought by the Subpoena is irrelevant for this reason too.

***Third***: though Defendants' red herring reference to the date of "publication" of the images is clearly an attempt to limit Plaintiffs' remedies for Defendants' ongoing exploitation of their intellectual property, there is no authority in North Carolina for the proposition that a statute of limitations on a right of privacy claims to run on the date of publication. To the contrary, and as noted *supra*, such cause of action does not accrue until the injury "becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs." N.C. Gen Stat. § 1-52(16). *See also, Alexander v. City of Greensboro* 09-cv-293, 2011 WL 3360644, at 13 (noting that although "[u]nder the common law, a cause of action [for violation of a right of privacy] accrue[d] at the time the injury occurs…[t]his principle has been modified by N.C. Gen Stat. § 1-52(16).") (Emphasis added)). Since the date of "publication" of Defendants' advertisements is not relevant to any statute of limitations analysis, Defendants' reference to it in their Subpoena should be ignored as the only operative issue on a statute of limitations inquiry is whether there was any delay between Defendants' "use" of Plaintiffs' images, which is ongoing, and the lawsuit.

***Fourth***: when CLF learned about Defendants' use of Plaintiffs' image -- and the purported "means, methods and/or processes" by which it "learned" of these publicly published

7

advertisements -- is also irrelevant because the operative inquiry in North Carolina is when each *Plaintiff* learned about Defendants' use of her image, not when her *lawyers* did. *See Rogerson v. Fitzpatrick*, 121 N.C. App. 728, 733 (1996) (under the discovery rule, the statute of limitations for a cause of action accrues "when the *plaintiff* knows or has reason to know of the injury which is the basis of the action." (Quoting *Bireline v. Seagondollar*, 567 F.2d 260 (4th Cir. 1977) (emphasis added)); *Owens v. Baltimore City State Attorneys Office*, 767 F.3d 379, 389 (4th Cir. 2014) (same).[1] *See also,* N.C. Gen Stat. § 1-52(16) (a cause of action does not accrue until the injury "becomes apparent or ought reasonably to have become apparent to the *claimant*, whichever event first occurs.") (Emphasis added). There is no authority for the proposition that a statute of limitations will accrue when a party's lawyer "knows or has reason to know of the injury which is the basis of the action," either within North Carolina or without. Were this Court to hold, contrary to decades of precedent, that when a party's lawyer learned certain facts that could form the predicate of a potential claim is now relevant to a statute of limitations inquiry, this would have extraordinary ramifications, as it would open the door to discovery from plaintiffs' lawyers in any lawsuit in which a defendant issued a statute of limitations defense. Not only would attempts to depose attorneys become rote, and attorney-client and work product disputes skyrocket, but defendants would use such new rule to mount multiple statute of limitations defenses, just as Defendants are attempting here: one based on when a party learned or should have learned about a potential claim, and one based on when that party's lawyer

---

[1] Leaving no question concerning the irrelevance of the information sought by Defendants, the Subpoena not only requires testimony relating to any alleged "methods, means, and/or processes" CLF purportedly used to discover Plaintiffs' images as used by Defendants, but also seeks such "methods, means, and/or processes" CLF purportedly used to uncover publicly published advertisements in other unrelated lawsuits. *See* Subparts d and e of the Subpoena, seeking information relating to "[t]he means, methods, and processes" "utilized by The Casas Law Firm, P.C. to discover, come across, learn of, or otherwise become aware of social media posts, advertisements, or other publications that contain photos and likenesses of the Plaintiffs." Such information has no relevance to Defendants' defenses in this lawsuit and the request for it should likewise be quashed.

8

learned or should have learned about a potential claim. Courts would be obligated, on a case-by-case basis, to determine whether it was the date the party, or the party's lawyer, learned facts sufficient to bring a lawsuit that controlled for statute of limitations purposes. To say nothing of the fact that plaintiffs who sat on their claims for years could argue that, since they did not inform their lawyers of the potential claim until shortly before suit, the statute of limitations could not bar their lawsuit. Thus, since the date CLF learned about Defendants' use of Plaintiffs' images is irrelevant, the Subpoena should be quashed for this reason as well.

**Fifth**: even if this Court were to determine the date Plaintiffs' lawyers learned about the infringement was relevant, Defendants would nevertheless be precluded from asserting a laches defense in this case on Plaintiffs' Lanham Act claims because it is well-settled that laches is not an available defense "when the defendant intended the infringement." *CSL Silicones, Inc. v. Midsun Group, Inc.*, 170 F.Supp. 3d 304, 316 (D. Conn. March 15, 2016) (emphasis added) (quoting *Hermes, Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107 (2d Cir. 2000).[2] "The application of that principle to bar timeliness defenses by intentional intellectual property infringers is well-established." *Id.* (citing cases). *See also*, *Argus Research Group, Inc. v. Argues Media, Inc.*, 562 F.Supp.2d 260, 273 (D. Conn. 2008) (the "good-faith component of the laches doctrine <u>denies the benefits of laches to any defendant that has intentionally infringed on the plaintiff's mark</u>.") (Emphasis added); *CSL Silicones,* 2016 WL 3566188, at *2 n.1 (noting that, while Plaintiff "had the burden of proving its claim was not barred by laches…<u>Plaintiff met that burden by alleging Defendant intentionally infringed on its mark</u>.") (Emphasis added).

---

[2] *See Belmora LLC v. Bayer Consumer Care AG*, 987 F.3d 284, 293 (4th Cir. 2021) ("[L]aches is the appropriate defense to § 43(a) claims," as opposed to the most "analogous state statute of limitations.")

Not only have Plaintiffs alleged Defendants engaged in an intentional marketing scheme predicated on the misappropriation of Plaintiffs' trademarks, *i.e.,* intentionally infringing on Plaintiffs' intellectual property,[3] but Defendants behavior and marketing tactics post-suit leave no question concerning the willfulness of their behavior. For sixteen (16) months Defendants have been on notice of their infringement of Plaintiffs' intellectual property and not once during that time have they ever offered justification or explanation for these many infringements. Despite this, Defendants' use of Plaintiffs' images continues. This Court needs no other evidence concerning Defendants' willfulness, because "[i]f the infringing conduct was truly innocent, or in good faith, or of a non-willful and deliberate nature, the unauthorized use should have ceased once suit was filed." *Ramada Franchise Sys. Inc. v. Boychuck*, 283 F.Supp.2d 777, 793 (N.D.N.Y. 2003) (emphasis added). Courts across the United States have not hesitated to find an infringing defendant acted "willfully" when the trademark infringement persisted post-suit. *See Coach, Inc. v. Goodfellow*, 717 F.3d 498, 506 (6th Cir. 2013) (affirming grant of attorneys' fees based because defendant's trademark infringement was "willful," as evidenced by the fact that he "had actual notice of ongoing infringing activity," and "[d]espite such knowledge [he] continued to facilitated the infringing activity…."); *Max Rack, Inc. v. Core Health & Fitness, LLC*, 16-cv-1015, 2020 WL 2128614, at * 7 (S.D. Ohio May 5, 2020) (awarding attorneys' fees to plaintiff where the trademark infringement was willful, as evidenced by the fact that the "trademark infringement persisted after [the] suit was filed"); *Ohio State Univ. v. Skreened Ltd.*, 16 F.Supp.3d 905, 921 (S.D. Ohio 2014) ("A defendant can said to be willful when the defendant has ignored actual notice of ongoing infringing activity."). Since a laches defense will be

---

[3] *See* Compl., ¶ 28 ("Each of the Plaintiff' Images was misappropriated, intentionally altered, by one or more of the Defendants in order to make it appear that they worked at, sponsored or promoted, or were otherwise associated or affiliated with Defendants.").

10

unavailable to Defendants, the information they seek is not relevant their defense of the lawsuit and this is additional grounds to quash the Subpoena.

### III. Enforcement of the Subpoena Will Cause Undue Burden to CLF and Will Not Aid Defendants.

As set forth on Exhibit B, the Subpoena was served on CLF one week before the close of discovery and was issued in a last-ditch effort by Defendants to manufacture a statute of limitations defense after each Plaintiff provided deposition testimony Defendants obviously believe to be problematic for such defense. Rule 26(b)(2) of the Federal Rules of Civil Procedure provides that a district court may limit discovery if it concludes

> "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or, (iii) the burden or expense of the proposed discovery outweighs its likely benefit."

Fed.R.Civ.P. 26(b)(2); *see also*, Fed.R.Civ.P. 26(c) (providing discretion to court to protect a person "from annoyance, embarrassment, oppression, or undue burden or expense"). Here, Defendants had "ample opportunity" to gather evidence concerning any anticipated statute of limitations defense and did in fact gather such evidence; the fact that evidence does not align with their anticipated statute of limitations arguments is no basis to allow them to drag Plaintiffs' law firm into this litigation. Moreover, CLF should not be obligated to expend the time and resources necessary to prepare a witness for a deposition on topics that have no relevance to these proceedings or Defendants' defense and which, as discussed immediately *infra*, are fraught with privilege issues.

Finally, and on the issue of hardship, should the Court rightly reject Defendants' attempt to delve into irrelevant and confidential material relating to any alleged "means, methods or processes" utilized by CLF, this will have no bearing on Defendants' ability to argue, at

11

summary judgment or otherwise, Plaintiffs' claims are barred by the applicable statutes of limitations. Specifically, Defendants will be able to argue that Plaintiffs' injuries in this lawsuit were apparent to Plaintiffs, or should have been apparent to them, long before Plaintiffs filed this action. *See* N.C. Gen Stat. § 1-52(16). In addition to the fact that the Court should "give extra consideration" to the objections of a non-party like CLF in weighing burdensomeness versus relevance, *see Schaff*, 233 F.R.D. at 453 (citations omitted), the fact that Defendants will not be harmed by being deprived of the information sought by the Subpoenas should be also considered in evaluating the reasonableness of the Subpoena, and would further support the Court's decision to quash it. *See Vengosh*, 2020 WL 5709256, at *3 ("The determination of the reasonableness of a subpoena requires the court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it, weighing the benefits and burdens, considering whether the information is necessary and whether it is available from another source." )

**IV.     The Information Sought by the Subpoena is Privileged, Confidential, and Protected by the Work Product Doctrine.**

Subparts a-c of the Subpoena seeks the date and time CLF learned about Defendants' advertisements, the "means and methods" by which CLF learned about them, and the "process by which" CLF learned about them. The "means" "methods" and "processes" of an attorney in preparing a lawsuit are precisely the sort of "mental impressions, conclusions, opinions, and legal theories of a party's attorney," that are "heavily protected" and "discovered only in very rare and extraordinary circumstances." *Lively v. Reed*, 20-cv-119, 2021 WL 664853 (W.D. N.C. Feb. 19, 2021) (internal quotations and citations omitted). As noted *supra*, the purpose of the work product doctrine is to protect material "'prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative…,'" *Allendale Mut. Ins. Co. v.*

12

*Bull Data Sys., Inc.*, 152 F.R.D. 132, 135 (N.D. Ill. 1993) (quoting Fed. R. Civ. P. 26(b)(3)), and this would include the means, methods, and processes an attorney use to evaluate a plaintiff's potential claims. Irrespective of the "means, methods, and processes" by which CLF "learned" about Capital Cabaret's publicly published advertisements, CLF would have only learned about the advertisements in connection with its inquiry as to the use of images in commercial advertising and whether that use could form the predicate of legal causes of action. This is the epitome of a lawyer's impressions, conclusions, opinions, or theory which are nearly absolutely protected.

Similarly, assuming, *arguendo*, that there are in fact "methods, means, and/or processes" by which CLF learned of Defendants' public advertisements, they would be protected by the attorney-client privilege, which protects disclosures "necessary to further the goal of enabling the client to seek informed legal assistance." *U.S. v. Duke Energy Corp.*, 214 F.R.D. 383, 387 (M.D.N.C. 2003) (quoting *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1427-28 (3d Cir. 1991). Any "means, methods, or processes" utilized by CLF were in furtherance of its representation of Plaintiffs and in furtherance of the goal of enabling Plaintiffs to obtain informed legal assistance from CLF, as CLF would not have employed such alleged "means, methods or processes" unless it was for the purpose of communicating legal advice to Plaintiffs. *See In re Grand Jury Proceedings*, 102 F.3d at 750 ("[U]nder normal circumstances, an attorney's advice provided to a client, and the communications between attorney and client are protected by the attorney-client privilege.").

Finally, and as noted *supra*, a district court may quash or modify a subpoena if it requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). Assuming, *arguendo*, there were particular "means,

methods, or processes" by which CLF learned about Defendants' use of Plaintiffs' images, those methods would be confidential and proprietary commercial information which is not subject to disclosure.

## CONCLUSION

This Court should grant CLF's motion and quash the Subpoena and/or

Dated: New York, New York
February 7, 2023

**THE CASAS LAW FIRM, P.C.**

By: /s/ John V. Golaszewski
John V. Golaszewski*
1740 Broadway, 15th Floor
New York, New York
T: 855.267.4457
F: 855.220.9626

*Counsel for Non-Party
The Casas Law Firm, P.C.*

14

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of February, 2023, the foregoing was served on counsel for Defendants via ECF

/s/ John V. Golaszewski